

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT 1:13CR 210 |
| Plaintiff, | ) | |
| | ) | CASE NO. |
| v. | ) | |
| | ) | JUDGE POLSTER |
| DAVID DONADEO, aka DAVID A. RUPP, | ) | JUDGE |
| DENNIS BOYLES, | ) | Title 18, United States Code §§ 1349 and 1956(h) |
| Defendants. | ) | Title 26, United States Code §§ 7201 and 7206(1) |
| | ) | |

The Grand Jury charges:

## General Allegations

At all times material and relevant to this Indictment:

1.      Joseph M. Palazzo, who is named but not charged herein ("Joe Palazzo"), was a resident of Independence, Ohio, which is located in the Northern District of Ohio, Eastern Division.   Joe Palazzo was employed by the Cuyahoga Heights School District (the "District") as its Information Technology ("IT") Director.   In that capacity, Joe Palazzo was responsible for managing the District's IT Department, and his responsibilities included purchasing hardware and software and making other IT expenditures to benefit the District and its students.

2

2.      The defendant DAVID DONADEO, aka DAVID A. RUPP, was a resident of Broadview Heights, Ohio.   In consultation with Joe Palazzo, DONADEO incorporated an Ohio-based corporation called "DDR Technology Co." ("DDR Technology"), and also established one or more related corporate bank accounts.

3.      The defendant DENNIS BOYLES was a resident of Garfield Heights, Ohio.   In consultation with Joe Palazzo and others, BOYLES incorporated "Macwin-Protocol Technology Services, Inc." ("Macwin-Protocol"), and established one or more related corporate bank accounts.

4.      A person described herein as "Shell Vendor Owner ("SV Owner") #1" incorporated "Shell Vendor Company ("SV Company") #1," an Ohio corporation that SV Owner #1 established in consultation with Joe Palazzo.   SV Owner #1 also established a related corporate bank account for this entity.

5.      Business #1 was a business located in Northeast Ohio open to the public.   It was opened and operated by DONADEO and others.

The Grand Jury further charges:

## COUNT 1
**(Conspiracy to Commit Mail Fraud, 18 U.S.C. § 1341,
in violation of 18 U.S.C. § 1349)**

6.      Paragraphs 1 through 5 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

7.      From on or about January 6, 2007, and continuing through on or about February 14, 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, Joe Palazzo, DAVID DONADEO, DENNIS BOYLES, and others known and unknown to the Grand Jury, did

3

knowingly and intentionally combine, conspire, confederate, and agree together and with each

other to commit offenses against the United States of America, that is, to devise and intend to

devise a scheme and artifice to defraud the District and to obtain money and property from it by

means of false and fraudulent pretenses, representations, and promises, and for the purpose of

executing and attempting to execute such scheme and artifice to defraud, knowingly placed and

caused to be placed in any post office and authorized depository for mail matter, any matter or

thing, to be delivered by the Postal Service and any private and commercial interstate mail carrier

according to the direction thereon, in violation of Title 18, United States Code, Section 1341.

## Object of the Conspiracy

8.     The object of the conspiracy was to divert millions of dollars of District funds to

personal use by submitting to the District for payment false invoices that purported to be for goods

and services purchased by the District's IT Department to benefit the District from legitimate

companies when, in truth and in fact, those companies were owned by various coconspirators,

were used as "shells," and did not in fact supply such goods to or perform such services for the

District.

## Manner and Means

9.     It was part of the conspiracy that DONADEO, BOYLES, and SV Owner #1

incorporated various companies in the State of Ohio that did not in fact manufacture, supply, or

sell any goods or services; and that SV Owner #1 used an existing company incorporated for other

purposes in connection with claims that such company had manufactured, supplied, or sold goods

or services to the District that in fact it had not.   (These companies are collectively referred to

herein as "Shell Vendor Companies.")

4

10.     It was further part of the conspiracy that Joe Palazzo prepared false invoices that stated that the Shell Vendor Companies had provided IT-related goods and services to the District when, in fact, the Shell Vendor Companies had not provided the District with the goods or services reflected in those invoices.

11.     It was further part of the conspiracy that Joe Palazzo represented that the invoices were legitimate and approved the false invoices himself or forged the signature of another in the approval section.   These invoices – which often contained vague descriptions and misspellings of the items or services purportedly purchased, and fictitious descriptions of nonexistent hardware or software – were for services never performed, fictitious software and hardware, and software and hardware never received or already purchased by the District from another source.   Joe Palazzo submitted the false invoices to the District for payment, and caused checks to be issued to the Shell Vendor Companies.

12.     It was further part of the conspiracy that Joe Palazzo delivered to DONADEO, BOYLES, and others District checks made payable to the Shell Vendor Companies.

13.     It was further part of the conspiracy that DONADEO, BOYLES, and others established bank accounts in the names of the Shell Vendor Companies to receive the stolen funds.

14.     It was further part of the conspiracy that DONADEO, BOYLES, and others deposited the District checks into the Shell Vendor Companies' bank accounts, kept approximately half of the stolen funds for their own use, and returned the remainder of the stolen funds to Joe Palazzo via check or cash for his personal use.

15.     It was further part of the conspiracy that between in or around April 2008 and in or around December 2010, Joe Palazzo caused the District to issue more than 30 checks totaling

5

approximately $260,167.22 to Macwin-Protocol for products and services the District never received.

16.     It was further part of the conspiracy that between in or around April 2008 and in or around December 2010, BOYLES deposited more than 30 checks totaling approximately $260,167.22 into Macwin's US Bank business bank account.

17.     It was further part of the conspiracy that between in or around January 2009 and in or around January 2011, Joe Palazzo caused the District to issue more than 70 checks totaling approximately $648,035.37 to DDR Technology for products and services the District never received.

18.     It was further part of the conspiracy that between in or around January 2009 and in or around January 2011, DONADEO deposited more than 70 checks totaling approximately $648,035.37 into DDR Technology's US Bank business bank account.

19.     It was further part of the conspiracy that between on or about August 12, 2009, and on or about December 28, 2010, Joe Palazzo caused the District to issue more than 30 checks totaling approximately $268,913.40 to SV Company #1 for products and services the District never received.

20.     It was further part of the conspiracy that between on or about August 12, 2009, and on or about January 3, 2011, DONADEO deposited or caused to be deposited more than 30 checks totaling approximately $268,913.40 into SV Company #1's Chase Bank business bank account.

### Acts In Furtherance of the Conspiracy

21.     In or around February 2008, BOYLES incorporated Macwin-Protocol.

22.     In or around January 2009, DONADEO incorporated DDR Technology.

23.     In or around April 2009, SV Owner #1 incorporated SV Company #1.

6

24.     On or about May 8, 2009, DONADEO and SV Owner #1 filed a Statutory Agent

registration for SV Company #1 changing its Statutory Agent.

25.     The following chart reflects examples of the fraudulent checks obtained from the

District and deposited by the conspirators in furtherance of this scheme:

| District Check No. | Related Purchase Order No. | Deposit Date | Amount | Check Payee | Bank of Deposit |
|---|---|---|---|---|---|
| 72132 | 52157 | 3/12/2009 | $6,816.00 | DDR Technology | US Bank |
| 73716 | 57001 | 9/21/2009 | $17,136.00 | SV Company #1 | Chase Bank |
| 73718 | 57003 | 9/18/2009 | $8,388.00 | Macwin-Protocol | US Bank |
| 74317 | 57311 | 11/5/2009 | $8,388.00 | Macwin-Protocol | US Bank |
| 74555 | 57439 | 12/10/2009 | $14,940.00 | SV Company #1 | Chase Bank |
| 74554 | 57438 | 1/4/2010 | $13,188.00 | DDR Technology | US Bank |
| 74800 | 57561 | 12/24/2009 | $17,849.99 | DDR Technology | US Bank |
| 75044 | 57744 | 1/22/2010 | $24,838.00 | SV Company #1 | Chase Bank |
| 76005 | 58024 | 3/18/2010 | $9,599.68 | Macwin-Protocol | US Bank |
| 77859 | 59077 | 10/27/2010 | $9,800.00 | DDR Technology | US Bank |

**The Use of the U.S. Mail in Furtherance of the Conspiracy**

26.     On or about the dates listed below, Joe Palazzo, DAVID DONADEO, DENNIS

BOYLES, and others, for the purpose of executing and attempting to execute the scheme and

artifice to defraud described above, caused documents to be delivered and sent through the United

States mail to and from the Northern District of Ohio and elsewhere, including the following:

| Date | Description of Document | Recipient |
|---|---|---|
| 1/6/2007 | Amendment by Shareholders or Members to Articles of Incorporation for a Shell Vendor Company | Ohio Secretary of State |
| 2/1/2007 | State of Ohio Certificate of Amendment by Shareholders or Members to Articles of Incorporation for a Shell Vendor Company | Ducato & Koesel, Inc., in Beachwood, Ohio |
| 8/21/2007 | Initial Articles of Incorporation for a Shell Vendor Company | Ohio Secretary of State |

7

| 8/23/2007 | State of Ohio Certificate of Incorporation for a Shell Vendor Company | SV Owner #1, in Cleveland, Ohio |
|---|---|---|
| 2/9/2008 | Initial Articles of Incorporation for Macwin-Protocol | Ohio Secretary of State |
| 2/20/2008 | State of Ohio Certificate of Incorporation for Macwin-Protocol | DENNIS BOYLES, in Garfield Heights, Ohio |
| 1/10/2009 | Initial Articles of Incorporation for DDR Technology | Ohio Secretary of State |
| 1/13/2009 | State of Ohio Certificate of Incorporation for DDR Technology | DAVID DONADEO |
| 4/26/2009 | Initial Articles of Organization for SV Company #1, a domestic LLC | Ohio Secretary of State |
| 4/28/2009 | State of Ohio Certificate of Organization as a domestic LLC for SV Company #1 | SV Owner #1, in Cuyahoga County, Ohio |
| 5/7/2009 | Statutory Agent Update form for SV Company #1 | Ohio Secretary of State |
| 5/11/2009 | State of Ohio Certificate reflecting updated Statutory Agent for SV Company #1 | DAVID DONADEO / SV Owner #1, in Cleveland, Ohio |
| 9/22/2009 | Fictitious Name/Original Filing for SV Company #1, dba Business #1 | Ohio Secretary of State |
| 9/24/2009 | State of Ohio Certificate of reflecting Business #1 Fictitious Name filing | Legalzoom.com, Inc. |

27.     As a result of the foregoing conspiracy and fraudulent conduct, the District was defrauded and sustained a total loss of approximately $3,333,448.

All in violation of Title 18, United States Code, Section 1349.


The Grand Jury further charges:

<u>**COUNT 2**</u>
**(Money Laundering Conspiracy, 18 U.S.C. § 1956(h))**

28.     Paragraphs 1 through 5 and 9 through 27 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

8

29.     From on or about January 12, 2007, through on or about February 11, 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, Joseph M. Palazzo, DAVID DONADEO, DENNIS BOYLES, and others, known and unknown to the Grand Jury, did knowingly and voluntarily, conspire, combine, confederate, and agree together and with each other to knowingly and intentionally conduct and attempt to conduct a series of financial transactions affecting interstate commerce, which transactions involved the proceeds from a specified unlawful activity:   that is, mail fraud, in violation of Title 18, United States Code, Section 1341, knowing that the transactions involved the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal the nature, location, source, ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### Object of the Conspiracy

30.     The object of the conspiracy was to disguise the ultimate recipients of funds stolen from the District that were the proceeds of a conspiracy to commit mail fraud by depositing such funds into the bank accounts of the Shell Vendor Companies and using those accounts (A) to pay personal expenditures of the co-conspirators and withdraw cash and issue checks from those accounts for the benefit of the co-conspirators, and (B) to issue checks and otherwise transfer funds from those accounts to start and operate Business #1.

### Manner and Means

31.     It was part of the conspiracy that DONADEO, BOYLES, and others established bank accounts at various financial institutions on behalf of the Shell Vendor Companies.

9

32.     It was further part of the conspiracy that DONADEO, BOYLES, and others deposited District checks that were the proceeds of a mail fraud conspiracy into the Shell Vendor Companies' bank accounts.

33.     It was further part of the conspiracy that DONADEO, BOYLES, and others paid for personal items, withdrew cash, and issued checks from the Shell Vendor Companies' bank accounts for their own benefit and that of Joe Palazzo, each receiving approximately fifty percent of the stolen funds.

34.     It was further part of the conspiracy that Joe Palazzo deposited the checks he received from the Shell Vendor Companies into various bank accounts that he controlled or negotiated the checks for cash.

35.     It was further part of the conspiracy that, between January 2009 and January 2011, DAVID DONADEO deposited more than 70 checks, which were the proceeds of funds fraudulently obtained from the District totaling approximately $648,035.37, into DDR Technology's US Bank business bank account to conceal the illegal nature of such funds and to avoid detection by law enforcement.

36.     It was further part of the conspiracy that, between on or about January 30, 2009 and on or about January 14, 2011, Joe Palazzo and DONADEO caused DDR Technology to issue checks totaling approximately $350,784.00 to Joe Palazzo.

37.     It was further part of the conspiracy that, between April 2008 and December 2010, DENNIS BOYLES deposited more than 30 checks, which were the proceeds of funds fraudulently obtained from the District totaling approximately $260,167.22, into Macwin-Protocol's US Bank business bank account to conceal the illegal nature of such funds and to avoid detection by law enforcement.

10

38.     It was further part of the conspiracy that, between on or about April 5, 2008, and on or about December 21, 2010, Joe Palazzo and BOYLES caused Macwin-Protocol to issue checks totaling approximately $118,621.04 to Joe Palazzo.

39.     It was further part of the conspiracy that DONADEO issued IRS Form 1099 Statements to Joe Palazzo falsely indicating that he had performed services for DDR Technology of a kind and in a quantity sufficient to support payments to Joe Palazzo in the amounts of the checks issued to him from DDR Technology's bank accounts and was being paid for such services with legitimate funds.

40.     It was further part of the conspiracy that Joe Palazzo claimed on his tax returns the amounts funneled to him through DDR Technology and otherwise to make it appear as though the funds he received were legitimate income.

41.     It was further part of the conspiracy that DONADEO and others used funds diverted from the District to SV Company #1 to open and operate Business #1.

42.     It was further part of the conspiracy that, between on or about August 12, 2009, and on or about January 3, 2011, DAVID DONADEO deposited or caused to be deposited more than 30 checks, which were the proceeds of funds fraudulently obtained from the District totaling approximately $268,913.40, into SV Company #1's Chase Bank business bank account to conceal the illegal nature of such funds and to avoid detection by law enforcement.

### Acts In Furtherance of the Conspiracy

### A.     DDR Technology

43.     On or about February 27, 2009, Joe Palazzo caused the District to issue check number 72017, dated February 27, 2009, in the amount of $6,459.00, made payable to DDR Technology.

11

44.     On or about February 27, 2009, DONADEO wrote check No. 1003, dated February 27, 2009, and drawn on the US Bank account of DDR Technology, in the amount of $3,229.50, made payable to Joe Palazzo.

45.     On or about January 7, 2010, Joe Palazzo caused the District to issue check number 74844, dated January 7, 2010, in the amount of $7,620.00, made payable to DDR Technology.

46.     On or about January 11, 2010, DONADEO wrote check No. 1057, dated January 11, 2010, and drawn on the US Bank account of DDR Technology, in the amount of $3,810.00, made payable to Joe Palazzo.

47.     On or about January 14, 2011, Joe Palazzo caused the District to issue check number 78797, dated January 14, 2011, in the amount of $6,800.00, made payable to DDR Technology.

48.     On or about January 14, 2011, DONADEO wrote check No. 1103, dated January 14, 2011, and drawn on the US Bank account of DDR Technology, in the amount of $3,400.00, made payable to Joe Palazzo.

**B.     SV Company #1**

49.     On or about June 22, 2009, SV Owner #1 opened a business bank account for SV Company #1 at Chase Bank and deposited check No. 1140 in the amount of $100, made payable to SV Company #1, which SV Owner #1 issued from another Shell Vendor Company corporate bank account.

50.     On or about August 12, 2009, Joe Palazzo caused the District to issue check number 73343, dated August 12, 2009, in the amount of $7,268.00, made payable to SV Company #1.

12

51.     On or about August 12, 2009, DONADEO deposited or caused District check number 73343 to be deposited into SV Company #1's Chase Bank business bank account.

52.     On or about August 21, 2009, DONADEO issued or caused SV Company #1 to issue from its Chase Bank business bank account check No. 1001, in the amount of $1,000, made payable to an architecture firm to pay for architectural drawings for a project at Business #1's location.

53.     On or about August 31, 2009, Joe Palazzo caused the District to issue check number 77316, dated August 31, 2009, in the amount of $9,600.00, made payable to SV Company #1.

54.     On or about September 16, 2009, DONADEO paid or caused SV Company #1 to pay $184 to Legalzoom.com via a debit card purchase from SV Company #1's Chase Bank business bank account for legal document drafting services in relation to Business #1.

55.     On or about September 23, 2009, DONADEO made a filing with the Ohio Secretary of State that registered Business #1 as a fictitious name for SV Company #1 and listed SV Company #1 as Business #1's registered agent.

56.     On or about October 27, 2009, DONADEO issued or caused SV Company #1 to issue check No. 1012, in the amount of $3,500, made payable to the property owner of Business #1's location, with a notation in the memo line stating "Rent Nov."

57.     On or about January 19, 2010, DONADEO issued or caused SV Company #1 to issue check No. 1014, in the amount of $144.91, made payable to a freight company, with a notation in the memo line stating that it was for delivery of goods to Business #1.

13

58.    On or about December 28, 2010, JOE PALAZZO caused the District to issue check number 78424, dated December 28, 2010, in the amount of $5,812.00, made payable to SV Company #1.

59.    On or about January 3, 2011, DONADEO deposited or caused District check number 78424 to be deposited into SV Company #1's Chase Bank business bank account.

### C.    Macwin-Protocol

60.    On or about October 30, 2008, Joe Palazzo caused the District to issue check number 70941, dated October 30, 2008, in the amount of $8,249.50, made payable to Macwin-Protocol.

61.    On or about November 3, 2008, BOYLES wrote check No. 1021, dated November 3, 2008, and drawn on the US Bank account of Macwin-Protocol, in the amount of $4,125.25, made payable to Joe Palazzo.

62.    On or about August 31, 2009, Joe Palazzo caused the District to issue check number 73516, dated August 31, 2009, in the amount of $6,158.28, made payable to Macwin-Protocol.

63.    On or about September 3, 2009, BOYLES wrote check No. 1033, dated September 3, 2009, and drawn on the US Bank account of Macwin-Protocol, in the amount of $3,079.14, made payable to Joe Palazzo.

64.    On or about November 30, 2010, Joe Palazzo caused the District to issue check number 78173, dated November 30, 2010, in the amount of $7,152.00, made payable to Macwin-Protocol.

14

65.     On or about December 2, 2010, BOYLES wrote check No. 1058, dated December 2, 2010, and drawn on the US Bank account of Macwin-Protocol, in the amount of $3,576.00, made payable to Joe Palazzo.

All in violation of Title 18, United States Code, Section 1956(h).


The Grand Jury further charges:

## COUNT 3
### (Making and Subscribing a False Return, 26 U.S.C. § 7206(1))

66.     Paragraph 3 of this Indictment is realleged and incorporated by reference as if fully set forth herein.

67.     On or about April 15, 2009, in the Northern District of Ohio, Eastern Division, the defendant DENNIS BOYLES, a resident of Garfield Heights, Ohio, did willfully make and subscribe a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for calendar year 2008, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter.   That Form 1040, which was prepared and signed in the Northern District of Ohio and was filed with the Internal Revenue Service, stated that BOYLES' Taxable Income was $21,313, whereas, as he then and there knew and believed, BOYLES' correct Taxable Income was $32,359, approximately $11,046 of which were funds that BOYLES fraudulently obtained from the Cuyahoga Heights School District.

All in violation of Title 26, United States Code, Section 7206(1).

15

The Grand Jury further charges:

## COUNT 4
### (Tax Evasion, 26 U.S.C. § 7201)

68.     Paragraph 3 of this Indictment is realleged and incorporated by reference as if fully set forth herein.

69.     On or about April 15, 2010, in the Northern District of Ohio, Eastern Division, the defendant DENNIS BOYLES, a resident of Garfield Heights, Ohio, did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 2009, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was filed with the Internal Revenue Service.   In that false return, BOYLES stated that his taxable income for the calendar year 2009 was the sum of $25,893, and that the amount of tax due and owing thereon was the sum of $3,464.   In fact, as he then and there knew, his correct taxable income for the calendar year 2009 was the sum of $99,042, approximately $73,149 of which were funds that BOYLES fraudulently obtained from the Cuyahoga Heights School District, and upon which total amount of taxable income there was owing to the United States of America an income tax of $21,859.

All in violation of Title 26, United States Code, Section 7201.

16

The Grand Jury further charges:

## COUNT 5
### (Tax Evasion, 26 U.S.C. § 7201)

70.     Paragraph 3 of this Indictment is realleged and incorporated by reference as if fully set forth herein.

71.     During the calendar year 2010, the defendant DENNIS BOYLES, a resident of Garfield Heights, Ohio, had and received taxable income in the sum of approximately $64,031, which BOYLES had fraudulently obtained from the Cuyahoga Heights School District.  Upon that taxable income, there was owing to the United States of America an income tax of approximately $9,612.  Well knowing and believing the foregoing facts, BOYLES, from on or about January 1, 2010, through on or about April 15, 2011, in the Northern District of Ohio, Eastern Division, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year 2010 by failing to make an income tax return on or before April 15, 2011, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service said income tax at the time required by law, and by concealing and attempting to conceal from all proper officers of the United States of America his receipt and disposition of income through the following means:

      (a)    using the company Macwin-Protocol as a shell vendor company to receive funds stolen from the District and disguise the income that BOYLES derived from those stolen funds; and

      (b)    by using Macwin-Protocol to make personal expenditures totaling approximately $64,031 on his behalf.

All in violation of Title 26, United States Code, Section 7201.

17

## FORFEITURE RELATING TO COUNT 1

72.     The allegations of Count 1 are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  As a result of the foregoing offense, the defendants DAVID DONADEO and DENNIS BOYLES shall forfeit to the United States all property, real and personal, which constitutes, or is derived from, proceeds traceable to the commission of Count 1; including, but not limited to, the following:

      (a)    $19,388.69 seized from US Bank Account #xxxxxxxx5870 in the name of DDR Technology Co. [DAVID DONADEO]

      (b)    MONEY JUDGMENT: the defendant DAVID DONADEO shall forfeit property, including, but not limited to, a sum of money equal to the proceeds of Count 1.

      (c)    MONEY JUDGMENT: the defendant DENNIS BOYLES shall forfeit property, including, but not limited to, a sum of money equal to the proceeds of Count 1.

## FORFEITURE RELATING TO COUNT 2

73.     The allegations of Count 2 are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(1).  As a result of the foregoing offense, the defendants DAVID DONADEO and DENNIS BOYLES shall forfeit to the United States all property, real and personal, involved in such offense, and all property traceable to such property; including, but not limited to, the following:

      (a)    $19,388.69 seized from US Bank Account #xxxxxxxx5870 in the name of DDR Technology Co. [DAVID DONADEO]

18

## **SUBSTITUTE PROPERTY**

96.     In the event that any property subject to forfeiture under 18 U.S.C. § 981(a)(1)(C)

and 28 U.S.C. § 2461(c) and/or 18 U.S.C. § 982(a)(1), as a result of any act or omission of the

defendant(s):

      (a)     cannot be located upon exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with a third party;

      (c)     has been placed beyond the jurisdiction of this Court;

      (d)     has been substantially diminished in value; or,

      (e)     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) [as incorporated by 28 U.S.C.

§ 2461(c) and 18 U.S.C. § 982(b)(1)], to seek forfeiture of any other property of the defendant(s),

up to an amount equivalent to the value of the forfeitable property described above.

A TRUE BILL.

Original document -- Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.